May it please the court, Dennis Grossman, appellant pro se. I'm also an attorney. There are so many issues it's hard to determine where to begin, but I guess the best way is simply to cut to the chase. The centerpiece of the trustee's sanctions motion was the alleged frivolousness of the claim. The claim was based on a one-page contract. It's in the record numerous times. This one-page contract, notwithstanding the fact that the signatures are in individual form, if you look about halfway down, it shifts from personal obligations to corporate obligations. It talks about an investment in the Darlington nursing home. That investment is to be returned on or before a date certain. A reasonable argument can certainly be made that based upon the language right there, an investment in the home to be returned on or before a specific date comes back from the party into which the investment is made. There are other provisions in the substance of the contract. It says interest and other matters are to be paid when the debt service covenant is met and when the bank says we can take the money out. Judge Shea Stoneham, in her decision, said that relates to corporate solvency. In other words, when the corporation is doing well and the bank allows money to be paid, it can be paid. Well, another reasonable basis for arguing that the substance of the contract allows for a corporate liability. It also talks about dividends. Individuals don't pay dividends. Corporations do. Businesses do. Another reasonable basis for asserting corporate obligation. Are the signatures in corporate form? No. They're in individual form. I'm the first to admit that. But Ohio law, which I researched because I'm not an Ohio attorney. I'm admitted in New York and Florida. One of the first things I did was to go to the Hofstra and Fordham Law School libraries in New York and research Ohio law to see if it was consistent with the law of most other states. And it is. And basically that law is that notwithstanding signatures in individual form, if contract substance indicates corporate liability, the corporation is liable. I've gone through several bases here showing corporate liability or at least a reasonable basis for asserting corporate liability on the basis of this agreement. It gets better yet. In addition to that, I've cited several Ohio Appellate Court decisions, all of which stand for the proposition that I just articulated. Several from the Ohio Appellate Courts. An Ohio Supreme Court case, which is still good law, decided in 1905, Ongs versus Creek. Same thing. Exactly. That notwithstanding a signature in individual form, if there's a basis for corporate liability in the substance of the contract, the corporation is liable. Judge Katz, Northern District of Ohio, in another case I cited, held the same thing. These are reasonable bases for asserting corporate liability. Ultimately, the Sixth Circuit ruled against me, but that doesn't mean that my arguments were frivolous. In addition to that, the Sixth Circuit, after I lost before the Sixth Circuit on the merits, the Sixth Circuit stayed its mandate to allow me to go to the Supreme Court. The Supreme Court denied cert. The Supreme Court denied cert in 97, 98 percent of both cases. But the fact that the Sixth Circuit stayed its mandate should indicate that the claim was not frivolous. The Sixth Circuit does not stay its mandate for frivolous claims. Judge Gawn, in her two decisions, on the first decision, Judge Gawn, in her first appeal, expressly denied the trustee's motion for sanctions, holding that the appeal and the new claim arguments were not frivolous. She denied the trustee's sanctions motion. On the second appeal, which dealt with the merits of this claim, based upon this contract, Judge Gawn wrote a 24-page opinion. Twenty-four pages. That's not frivolous. Judge Gawn spent several pages dealing with the liability issue. She ruled against me, but still an extensive discussion. Not frivolous. When it came to the loan versus equity factors, Judge Gawn discussed 13 factors. On three of them, she ruled there was a tie. On four of them, she ruled in my favor. This was Judge Gawn on the second appeal. On six, she ruled in Ms. Mazur's favor, the trustee. In essence, on the loan versus equity factors, I lost by six to four. I respectfully submit to you, six to four is not frivolous. This was a substantial basis for a claim. In addition to that, my client's mother, who is their power of attorney, told me that she had negotiated a loan. Her interrogatory answers recited the details of her loan negotiations, where she swore under oath that this was a loan to the corporation. I testified at the sanctions trial that her story to me, when I was first retained, was consistent with her interrogatory answers. Everything, my research of Ohio law, the Sixth Circuit's granting of a stay, Judge Gawn's decisions where I lost by a narrow six to four margin, my client's representations to me, which are confirmed in her interrogatory answers, Ohio appellate case law, all show a substantial basis for arguing corporate liability. Did I lose? Yes. I've congratulated Ms. Mazur on her win, but that doesn't mean my arguments were frivolous. I cited several Ohio cases. Mr. Grossman, I understand that Judge Shea Stoneham based her decision, her sanctions, not only on—to me, I interpret her and construe her sanctions decisions being basically two-pronged. One determination that that claim was frivolous and was frivolously pursued. And the other element is the 1927 determination that she determined you had pursued this from the outset, the claim, and everything filed after that, as construed under the 28 U.S.C. Section 1927. So I know you want to argue about whether or not that original claim was frivolous, and I appreciate that because she did—I think that was part of her determination to award sanctions. But she also determined, I believe, that this whole course of conduct in your filings was vexatious and multiplied the proceedings and the other elements of 28 U.S.C. Section 1927. And what's your response to that? They were not vexatious. Number one, we're not dealing with a $35 parking ticket here. This was a $2.1 million claim. It was the largest unsecured claim in the entire estate. In terms of due process, the primary response there is, in addition to the fact that my filings just were not vexatious, there was no allegation of that in the trustee sanctions motion. Look at the trustee sanctions motion, docket number 953 in the Bankruptcy Court. On pages 24 through 32 is a section entitled, quote, actions warranting the imposition of sanctions. That's the title of the operative section of the trustee sanctions motion, actions warranting the imposition of sanctions, beginning on page 24. In that section, the trustee lists ten items, nine specific items and one kind of vague-ish item about replies and reconsiderations. Very quickly after my response, the trustee withdrew four of them on the grounds that they were frivolous. That leaves us with five specific items and one kind of nebulous reply reconsideration argument. Six items in the trustee's argument, quote, actions warranting the imposition of sanctions. What was my response? Okay, I got to defend against these six items. Not only in my written response, I responded to those six items. See, I viewed that much differently. The way I read that motion was they asked originally, I believe in that motion, for $326,000 in sanctions, something like that. Then it ended up backing out, they ended up eventually backing out the fees related to the appeals. I read that motion as seeking sanctions for all of their fees incurred responding to you, not with respect to items A, B, C, and D, but with respect to everything they did relating to your pursuit of the Gordon claims. I didn't read that motion as saying we only think A, B, C, and D were vexatious or were frivolous. These are examples of A, B, C, and D. And the reason I interpret that, because to me it was requesting all of their fees for all of your conduct, not for A, B, C, and D. They said they wanted all attorney's fees, quote, to defend against the Gordon's claim, quote, unquote. That was their language. I respectfully submit to you that the reasonable reading, the fair reading of that is that, okay, here are the items for which sanctions are short. Actions warning the imposition of sanctions. One, two, three, four, five, six, whatever. What's the damages? What's the relief we request? We want all our attorney's fees because of those actions which are allegedly sanctionable. A fair reading, just because they've requested all attorney's fees, doesn't mean that a fair reading of that is that everything I did, the entire gestalt, is sanctionable. The fair reading is, and the reading of their sanctions motion is that, okay, here are the items warning the imposition of sanctions. And they listed them. What's the relief they requested? We want all attorney's fees as damages. That's the fair reading of that. Anytime, just because they've alleged all attorney's fees as damages doesn't mean that a fair reading of that is that everything that I did is therefore sanctionable and that I'm somehow on notice of that. They could have very easily said, which they did not do in their sanctions motion, they could have very easily said, we want sanctions because everything that Attorney Grossman did from the get-go for four years is sanctionable. He engaged in vexatious conduct through his overall pattern of conduct. They could have very easily said that in their section which said, actions warning the imposition of sanctions. That would have given me fair notice. They didn't do that. This is a quasi-criminal proceeding. Now, do you think Judge Shea Stoneham put you on fair notice when she issued her show cause order under 1927? No, because her show cause order was a show cause order under 1927 to incorporate the findings asserted by the trustee in the trustee's prior sanctions motion. The trustee had made a sanctions motion, the first sanctions motion, in October 2009 under Rule 9011. Well, they blew the 9011 deadline, but the trustee made, that was the trustee's first sanctions motion, 9011. If you look at Judge Shea Stoneham's order to show cause, which she issued, I believe it was January or February of 2010, a few months later, it said, I should show cause why she shouldn't adopt the findings of fact asserted by the trustee in the trustee's prior sanctions motion. In that trustee's prior sanctions motion, the trustee did not allege that the entirety of my conduct was sanctionable. Indeed, their first sanctions motion was even narrower than their renewed sanctions motion. You know, it was a narrow focus primarily focusing on the alleged frivolousness of the claim. That was the focus of Judge Shea Stoneham's order. And under 1927, if I prosecute a frivolous claim or if an attorney prosecutes a frivolous claim, that's sanctionable. Prosecuting a frivolous claim in and of itself is sanctionable under Section 1927. The case law is absolutely clear. And isn't the case law clear, too, that everything from there forward is maybe awarded as sanctions or is part of the damages under 1927? Yes, if the claim is frivolous. Yes. If the claim is frivolous and we never should have been in court and there never should have been a claim, absolutely. Absolutely right. If the underlying complaint or claim is frivolous and there should have been no case to begin with, yes, you can award all attorney's fees as damages. But the fair reading of the allegation there is that the sanctionable conduct is bringing the allegedly frivolous claim, not that everything that I filed in four years was sanctionable. A lot of these documents that Judge Shea Stodem recited in her 37-page appendix weren't even mentioned in the trust. Most of them weren't even mentioned in the trustee's motion. Okay, I reviewed the docket and I counted 124 different filings you made in the estate case. Does that sound about right to you? It might be. Over the course of four years? Over the course of four or six years, whatever it was, I counted about 124 different filings. That may well be right. Is it your position then that the trustee or judge needed to put you on notice of every one of those 124 items that they may be subject to sanctions? They would not have to list them seriatim, but they would have to say something to the effect that everything I did, my entire course of conduct in filing 124 or whatever it was, was sanctionable, that I engaged in allegedly frivolous or vexatious filings in the entirety of my conduct. Judge Shea Stodem had no problem coming up with that language in her decision on March 28, 2013. It was a paragraph. The trustee easily could have said that in the trustee's motion. They didn't have to list all 124 filings that I made or however many it was, but they at least would have to give me notice, which they did not do, that I'm to defend the fact that I made all these filings, which is a lot different than saying the claim is frivolous. They gave me notice of the fact that they were seeking damages, all attorney's fees, for an allegedly frivolous claim. If that claim was frivolous, and I submit that it was not, but if that claim was frivolous, yes, they would be entitled to all attorney's fees because the litigation never should have existed and therefore all attorney's fees were the proximate damages they suffered if the claim was frivolous. But it was not. That's what they gave me notice of. That's what I litigated. That's what I focused on. And I respectfully submit to you, especially given the fact that this is a quasi-criminal proceeding, that due process requires that I be given specific notice of what it is I'm to defend against. I was not given that. I was given specific notice of 10 items. The trustee did not merely say, these are 10 items which are illustrative of Mr. Grossman's vexatious filings. Read the language in the trustee's motion. It says on page 24, leading into the operative section, it says, quote, actions warranting the imposition of sanctions, close quote. I said, okay, this is what I have to defend against. All attorney's fees, they're seeking damages for these alleged substantive, alleged frivolous filings. I submit to you that's a fair reading. I submit to you that, you know, that's what it should be. Due process requires reasonably specific notice, especially in these quasi-criminal proceedings. And, you know, I'm sorry for such a long-winded response, Judge Humphrey. Oh, that's okay. No, that's my contention. No, they would not have to list all 124, but they would at least have to say something to the effect, as Judge Sejstonim succinctly said, after the trial was over, everything that Grossman did was sanctionable, the entirety of his course of conduct. She said that, but it's two and a half months after the trial's over. What kind of notice is that? That's not fair notice. Let me talk, you know, let me talk about the trustee makes a point that I've allegedly engaged in vexatious filings because I'm constantly changing my legal theories. Not so. This was a floozy argument, which the trustee keeps on harping on, and Judge Sejstonim didn't even buy that because there's no basis for it. The trustee claims that I jumped from loan and then to equity and then to unjust enrichment, and I was constantly changing back and forth. Not so. Look at my first filing, November 10, 2008, when I sought to vacate the default order against my client's pro se claim. I expressly said in that first filing, my clients are loan creditors and equity holders. I was absolutely explicit. We're asserting both a loan position as a loan creditor and an equity holder. As my clients pointed out, they had been given a 10% equity position in the company as an additional inducement for making the loan. Absolutely consistent throughout, loan creditors and equity holders, 10%. Later, three months later, when my client's mother was confronted with an operating agreement that had been concealed from my clients and which contained their forged signatures, I made a motion to file a new claim based upon the forgeries, adding unjust enrichment and another claim based on the substance of those concealed operating agreements. But I never abandoned the original claim. I never said, okay, I'm now switching to this. This was an additional claim. It was ultimately denied, but I was not switching back and forth among different legal theories. Again, if the claim was so frivolous, and I submit to you that it was not, this was the entirety of the contract, one page. The second page are the signatures and the notarization. If this claim was so frivolous, which it was not for the reasons I've mentioned, where was the trustee's early dismissal motion? The trustee said, from the outset, it was obvious, according to the trustee, the claim had no legal basis, no factual basis, frivolous on its face from the outset. That was their October 2009 sanction motion and their December 2012 renewed sanctions motion. Well, I submit to you that it was not, but if it was, where was their early dismissal motion? On the basis of this one-page contract, which could have been litigated by an early dismissal motion, maybe $1,500 in attorney's fees, which they didn't make, instead, if you look at the cumulative fees that the trustee has charged the estate for litigating the merits of this and for litigating the sanctions, those fees are now pushing a half a million dollars. A half a million dollars to litigate this, and who's the fall guy? Me. I respectfully submit to you, this was a not frivolous claim. I was not given fair notice that everything that I filed over the course of four years was allegedly frivolous. Where was the trustee's early dismissal motion? They saw a liquid estate that they could churn for fees, and I'm the fall guy. I see that my time is almost up. I'm not abandoning my other issues, and certainly I'm not abandoning recusal, and I'm not abandoning the timeliness issue. I've pointed those out in the brief. I respectfully submit your Honor should reverse. Thank you. I'm going to give you just a minute or two longer to ask you about the motion for recusal. Isn't that moot at this point, Mr. Grossman? Judge Shea Stoneham has retired. She's no longer involved in the case. Why is it not moot anymore? It's not moot because if she should have recused herself, her decision should be null and void. I mean, obviously on any remand would obviously have to go back to a different judge. But if a judge retires, that does not moot the recusal motion because if a judge is either biased or gave an improper appearance of bias, she should never have decided the sanctions issues in the first place. Wasn't there a remedy to appeal that order rather than seek recusal months or years down the line? I did. I filed a prompt appeal, and this court dismissed my appeal as interlocutory. I filed an appeal from the first sanctions decision was in March 2013, which contained a denial of my recusal motion. I filed an appeal from that right away. Ms. Mazur made a motion to dismiss on the grounds that it was interlocutory. This court granted the motion, and in this court's decision dismissing that appeal as interlocutory, this court said, yes, we have the discretion to review Mr. Grossman's immediate appeal of recusal, but this court chose to exercise its discretion to await a final judgment to get a better perspective on it. So it's your opinion that if you were successful on your appeal of the motion to recuse, that that vacates or should result in vacating the order granting sanctions. Absolutely. Do I understand that? Absolutely. Is that the scope of what you would have vacated based on the motion to recuse? Yes, sure. I mean, my only remedy in this appellate court is to reverse the sanctions. I'll take any grounds I can get, whether it's timeliness, due process, substance, or recusal. Okay. So you would go back to the trial court and relitigate that issue on the motion for sanctions? Sure. If recusal were the only grounds that this court were to reverse on, yes, I would pursue my defense back in the trial court. I'm hoping for an absolute reversal and an order dismissing all the sanctions for the reasons I've articulated. But, again, I'll take any grounds that this court will give me. And if recusal is the grounds, yes, I'll go back to the trial court and defend my actions. But isn't that argument lost once this court decides whether or not the order granting sanctions should be affirmed or reversed? I mean, it sounds like you're asking for two bites at the same apple. You've appealed the order for sanctions. If it's affirmed, it would be on the basis that there was sufficient evidence in the record or sufficient basis in the record for it to have been entered properly by the court. Well, I mean, there are certain—I mean, if Judge Saystonem thought my filings might have been frivolous or vexatious, it doesn't mean that another judge should have. I'm entitled to a trial before a fair— What's your authority for vacating an order just because the judge should have recused herself? I mean, that's the case the Sixth Circuit has held. I forget the name of the case, but where a judge should have been recused, the judge's decision gets reversed, and it gets assigned to another judge. I mean, that's a basic legal proposition. There are a couple Sixth Circuit cases, and in other cases that I've cited in my recusal section, that's it. If the judge should be recused, everything that the judge did gets thrown away, and I respectfully submit to you, if you quote the record in terms of my recusal arguments, you can only reach one reasonable conclusion, and that is that recusal is required. Thank you, Mr. Grossman. Thank you. Good afternoon, Your Honors. If it please the Court, I'm Louise Mazur. I'm here on behalf of the Appellee David Worley Liquidation Trustee for the Royal Manor Bankruptcies. Sometimes all the best-laid plans for preparation go for naught, so I'd like to directly deal with some of the issues that Your Honors have raised during Mr. Grossman's argument and hopefully get through quickly enough to cover some other aspects of my argument. Mr. Grossman is incorrect when he says that the centerpiece of the motion for sanction stems from the fact that the claim was frivolous. That was part of the reason why the liquidation trustee requested sanctions, and that was part of the reason why the bankruptcy judge entered the order to show cause, while Mr. Grossman should not be sanctioned pursuant to Section 1927. Fortunately, I had the opportunity to look back while Mr. Grossman was here at the renewed sanction motion, and I believe, to your point, Your Honor, it's very clear that there were two bases. One, the underlying claim was frivolous. Gertrude Gordon knew it, which is why she intentionally redacted key provisions of the agreement. And Mr. Grossman knew it, which was the reason why he requested the opportunity to vary the terms of this agreement with parole evidence offering testimony of Gertrude Gordon, her children, and a former employee of Royal Manor. And that is why, yet again, when he was led with the realization that there was no loan because K-1s were issued to the Gordons, thus evidencing an equity contribution, not a loan to the entities, we then have, after that realization, the motion to file the new claim based upon this purportedly forged operating agreement. So, we have a document on its four corners that doesn't evidence anything but a personal obligation of the Schwartz's. When the realization of that sinks in, we have the motion to amend to bring in the parole evidence, all the while requiring discovery on that issue. And then when Mr. Grossman is confronted with these K-1s that I don't know if he realized were in documents he produced because he then asked me to email them to him, and that's all part of the record, shortly thereafter he files the motion to file new claim. Which, by the way, he said in numerous instances, in numerous pleadings, that if the motion to file new claim was granted, he'd abandon all the other claims. So, for Mr. Grossman to stand in front of this panel and say that he didn't continually change legal theories, I believe that that was disingenuous. What we really had was this. We had an attorney who was being paid on a 40% contingent fee basis. Mr. Grossman admitted during the hearing, the second hearing on sanctions, that he would be paid if and only if the claim was successful, and he therefore had an economic interest in the outcome. This is a clear example of grasping at legal straws. However, it's not the only basis through which the trustee sought sanctions. Please take time to look at the renewed sanction motion. I think it's very clear with a fair reading. We were giving examples of some of the most egregious conduct that Mr. Grossman had engaged in, but we were seeking sanctions for all the fees because both he and Gertrude engaged in a persistent course of conduct which was intended in bad faith to vexatiously multiply these proceedings. If I may. The positions taken by Attorney Grossman and Gertrude Gordon in support of the claim of Allison and David Gordon were unjustified, unsupported, and vexatiously intended to multiply these proceedings. Gertrude Gordon and Dennis Grossman pursued the Gordons' claim in bad faith and for improper purposes. There was no credible evidence or legal basis to support the claim that the Gordons were general unsecured creditors of Danny Darlington or any other debtor entity. Despite this fact, Gertrude Gordon and Attorney Grossman continued to file frivolous pleadings to vexatiously multiply these proceedings. The actions of Gertrude Gordon and Attorney Grossman were intentionally geared to harass the trustee and his counsel to significantly increase the cost of these proceedings, thereby forcing a settlement. And a header in a renewed sanction motion. Gertrude Gordon and Attorney Grossman advanced ever-changing legal theories because they knew the claim lacked merit but were intentionally pursuing a legal strategy to multiply these proceedings and cause the trustee to unnecessarily incur legal fees. I could go on, but I think you understand the point that I'm making here. I believe that we made it evidently clear that we felt Gertrude Gordon and Mr. Grossman intentionally pursued a litigation strategy that was intended to multiply the proceedings vexatiously so that we would incur additional fees, so that it would dilute the money available for the general unsecured creditors. That's exactly the pattern of conduct and activity that the bankruptcy judge felt was inappropriate, and that's exactly the type of activity that warrants the imposition of sanctions. I want to also point out, regarding the validity of the Gordons' claim, that every argument Mr. Grossman just made to this panel has been rejected by each and every court. The bankruptcy court, the district court, the Sixth Circuit, who said it's hornbook law that this agreement was not a debtor entity, it was a personal obligation. So again, the items cited in the brief were intended to be examples and examples only. It would be impossible within the confines of page limits to go through each and every pleading. 120 some of them. I want to also point out that Mr. Grossman has admitted the obvious, that if indeed this claim was a frivolous claim, the bankruptcy court properly awarded all sanctions that were incurred by the liquidation trustee to defend it. Let me ask, I'm glad you raised that. That raises a question I have. My understanding is this was originally the sanctions process from the trustee's perspective were started through a bankruptcy rule 9011 motion. And did the costs and fees related to that motion, are those included in the sanctions issued against Mr. Grossman? The costs and fees for what, Your Honor? Pursuing the 9011 motion, original motion? Yes, Your Honor. And what was the basis for pursuing the 9011 motion? The 9011 motion was pursued on the basis of invitation of the bankruptcy court to pursue that. We then filed a supplemental brief concerning sanction motions, requesting the imposition of sanctions pursuant to section 11 U.S.C. 105 in the court's inherent authority. But you are correct that the initial briefing, much of which detailed the conduct giving rise to the request for sanctions, was separately requested to be awarded in the fees and was included in that, Your Honor. I guess my question really is aimed at why, my understanding was eventually you backed away from pursuing it under 9011, and I'm assuming that that's because the safe harbor provisions of Rule 9011 were not complied with. Is that correct? Your Honor, that was part of it. We made numerous decisions during the course of this litigation to either abandon certain claims or certain theories based upon our hope to be able to narrow the appeals that would come out of it. And based upon some of the law that we felt that there were arguments that could be advanced for sanctions to be imposed pursuant to a 9011, stepping back from it and looking at the course of conduct, we believe that the inherent power of the court in section 28 U.S.C. 1927 would be more appropriate to deal with these issues because there were so many frivolous filings in the proceedings. Did the trustee or committee ever send a safe harbor letter to Mr. Grossman? There was a letter that was sent to Mr. Grossman from our office, and it was discussed during the course of my testimony during the second sanction hearing. When we discovered that the K-1s had been issued to Allison and David Gordon, we made it a point to sit down and have a discussion with Mr. Grossman, telling him at that time that we would possibly consider sanctions against him. At that time, my partner, Mark Merklin, sent a letter to Mr. Grossman outlining the fact that, yes, we had this conversation and we are contemplating whether or not to proceed with 9011. We have to also put in context that these proceedings were fast-paced. There were a lot of changes in legal theories, and we were simultaneously dealing with not only preparing for the hearing in June but also the first appeal in the district court on the purported denial of the motion to file a new claim. Your Honors, I'd like to go back and cover some of the other items that have been the topic of questions. Mr. Grossman criticizes the trustee for not filing for early dismissal. That would have been an impossibility based upon the theories that were being advanced. The initial theory was only on the four corners of the agreement when Mr. Grossman, I believe, realized that the facts and law didn't support that interpretation. That's when the amended claim came about, through which he intended to offer parole evidence. Your Honors, understand and realize that the standard that would be applied when a summary judgment motion is filed is that even if incredible, the testimony of Gertrude, the testimony of her children, would have to have been accepted by the bankruptcy judge as being true. It would have made no sense for us to file a dispositive motion because there were factual disputes that we could not overcome based upon their own self-serving statement. It wasn't until the actual day of the hearing that Mr. Grossman, for the first time, agreed and stipulated that the agreement was clear and unambiguous on its face and that parole evidence was therefore not needed for its interpretation. Let me go back to the 9011 motion. Yes, ma'am. Did Judge Shea Stone grant fees for that? I believe that those fees would have been included in what she included, yes. Absolutely. Why would she do that? I believe that the basis would be that 9011 motion set forth the various conduct giving rise to the request for sanctions. So while the motion itself was based upon the 9011, it certainly had the predicate for the sanctions to be awarded pursuant to the court's inherent power and under Section 1927, the factual predicate. Okay. So again, because of the parole evidence issue, it would not have been appropriate to file a dispositive motion when it was clear that the motion would have to have been denied. I want to also point out that while, again, Mr. Grossman criticizes the way that the trustee has handled this and the fees that have been incurred, each and every time the liquidation trustee or his attorney, my firm, Bross McDowell, have requested fees, there's been standard motion for fees, notice to all parties, and we've never had an objection. We've never had a general unsecured creditor come to court and object to, A, the manner in which we were handling this, or, B, the fees that were being requested. And I think that that contradicts the position that Mr. Grossman is taking in this case. Is that the same as saying those fees are reasonable for purposes of sanctions? I know at one point your opposing counsel stated that I think what I was saying, he was precluded from objecting because he wasn't a party to the motions just for approval of fees. He may not have been, but he was representing people who could have objected. And, again, that's when we're getting into a little bit of an oddity here. Mr. Grossman represented the Gordons for the vast majority of those fee applications. I think the last one where he appealed it, that relationship no longer existed. So, yes, if he felt, on behalf of his clients, that the fees being charged were excessive in terms of time bill or hourly rate, he could have objected. And, to what I think your point is, Judge Harrison, I want to also point out the following. We had two separate hearings here. The invoices we were requesting the award upon were given at the time that the renewed sanction motion was filed and then the supplemental notice. I was physically there and present to be able to be questioned and to testify regarding the fees and the reasonableness and, in fact, testify during both of those hearings. If Mr. Grossman felt that there were certain portions of the fees that were being requested that were not reasonable in terms of amount, hourly rate, or that they were necessary, he certainly could have and should have raised those issues before the bankruptcy court level. And, in one instance, he did. Because if you review the transcript of the hearing on the supplemental fees, Mr. Grossman, to his point and to his credit, raised the fact that there were fees included that should not have been because they were fees that were incurred to obtain court approval of the Gertrude Gordon settlement. And, if you notice, via a footnote in the supplemental opinion by the bankruptcy court, Judge Shea Stoneham clearly stated that, based upon the testimony that I went through with Mr. Worley, all those fees related to the approval of the Gertrude Gordon settlement were withdrawn. So, I hope that that does address what I'm believing your concern to be. Again, the invoices were there. Testimony was there. Judge Shea Stoneham stated in her supplemental opinion that she felt that the testimony of myself and the liquidation trustee was trustworthy and believable in terms of the fees, their necessity, and their reasonableness in these proceedings. Let me ask you this, Ms. Mazur, because you raised the renewed motion for sanctions. I believe Mr. Grossman has asserted that that was filed late and should be disregarded. What is the trustee's position with respect to that argument? Well, the trustee's position would be first for me to admit to you that I mistakenly believed that there was an additional three days because the Supreme Court's denial of the petition for writ of certiorari was sent out by regular mail. I was not aware of the decision until I received electronic notice through the Sixth Circuit website that they had removed the stay because the U.S. Supreme Court had denied the petition for writ of certiorari. So I, and I alone, made the mistake of calculating that based upon the date of the mandate, which would have been the shorter of the two, what I thought at the time. Your Honor, I believe that the point is this. The deadline that was established was one that was created by the bankruptcy judge herself. It was not a deadline that was established by statute, such as a statute of limitations. It was not a deadline established by any rule. It was one that the judge created herself, and I submit to this panel she had within her discretion the right and ability to modify that deadline. But that begs the question because the fact of the matter is this. Please remember, the renewed sanction motion was just that, a renewal of the original sanction motion and supplemental sanction motion that the trustee had filed in 2009. It was also a renewal of the show cause order that Judge Shea Stoneham issued in January of 2010. None of those had been ruled upon because Mr. Grossman took the position that the bankruptcy court was divested of jurisdiction of considering the sanction or show cause during the pendency of the three Gordon appeals. So the trustee's motion for sanction and the show cause order were held in abeyance. And as a matter of fact, in the decision whereby the bankruptcy court decided not to make a ruling, she specifically stated that she would hold the sanction in abeyance, quote, to consider a more complete picture of costs, expenses, and fees incurred. And I submit to you that that's what the renewed sanction motion was. Even if this court were to determine that the judge did not have the authority to permit the one-day late filing, that error was harmless because laying in wait were these unresolved motions for sanction and show cause order, which the court would still have to hear. So notwithstanding whether or not the decision to accept the renewed sanction motion was appropriate or inappropriate, any error, if any, would be harmless because Mr. Grossman was not going to be prejudiced. At some point, there was going to have to be a hearing on the show cause. At some point, there was going to have to be a hearing on the trustee's motion for sanctions. Thank you. There have also been some questions regarding the issue of recusal, and Judge Preston, I would like to discuss, I believe, some of the questions that you posed to Mr. Grossman. First off, I do not agree that recusal was warranted under the circumstances. Again, we're talking about an abuse of discretion standard. It's not enough to point to a few comments in this record, which is voluminous. We have 124 entries that Mr. Grossman filed and a total of 298 in the bankruptcy court alone. We had 11 hearings, 11, hundreds of pages of hearing transcripts. Mr. Grossman has only been able to point to a few innocuous comments that the judge made in the proceedings. The Supreme Court has recognized that in order to warrant recusal, you need something more than simply an opinion based upon facts that have been introduced in the proceedings. Even if a judge expresses annoyance, anger, or impatience, that's not enough. It has to be shown that there is clear bias such that the judge is incapable of rendering a fair decision. And I believe if you look at the facts and record, you will agree that Judge Shea Stoneham was capable of rendering a fair decision. She pointed out several times there were seven different recusal motions. Think about that, seven. I am, however, counting the request for recusal that was contained in the motion to withdraw the reference and the motion to reconsider the decision to deny the motion to remove the reference. Judge Shea Stoneham repeatedly affirmed that she had no personal animus against Mr. Grossman. She didn't know the litigants before the proceedings, and she was able to decide based on an unbiased fashion. Mr. Grossman puts points to innocuous comments that were made regarding the appeals and the effect that that had on the distribution to the legitimate unsecured creditors. That's a statement of fact. The money available to the creditors could not be distributed as soon as it otherwise would have been because of these appeals. We had to reserve money for the Gordon's claim. That was required under the plan. There were other innocuous comments that the judge made regarding settlement, again, within the span of four years of litigation, five years of litigation on two occasions, general comments about settlement. That doesn't warrant recusal. Mr. Grossman also criticized Judge Shea Stoneham because she made comments in her decisions that stated that the actions he took were frivolous. And I think that District Judge Pearson summed it up the best, that if Mr. Grossman's argument on this point were taken to its logical extreme, that would mean that every judge would be disqualified from ruling upon a sanction motion that's been filed in his court simply because he identifies the problems that have occurred within that proceeding. The judge was required to articulate the basis for her decision to impose sanctions. That is what she was obligated to do. That is what she did. And that does not give rise to recusal. To your point in a long-winded way, Judge Preston, I don't believe that recusal is warranted. I do not believe that the judge abused her discretion in denying the recusal motions. If this court would disagree, I don't believe that this needs to be remanded for an independent hearing. There's a wealth of evidence before this panel in the record, and there is precedence in the Sixth Circuit and others that say that this court on review can independently look at the record. There have been instances where a judge will look at sanctions under 1927, and a reviewing court will say sanctions under 105A would also be appropriate. So I think that this panel can independently make a determination from the facts and evidence. We've had two long hearings. We've had a plethora of different briefs. I think that this is something that could be decided by this panel in the unlikely event that you feel that the recusal should have been granted by Judge Sastone. And again, I do not feel that the recusal would be necessary. I want to briefly stress one aspect of Judge Sastone's decision that I think deserves special attention by this panel, and that is the context of what has occurred here. We have a bankruptcy proceeding, and the goal of it is to try to pay as much money as you can to the legitimate creditors of the debtor entities. In her decision, the bankruptcy judge looked to two factors. Number one, that the Gordons really hadn't produced a shred of evidence that their claim was valid. Number two, the repeated and pervasive course of conduct that Mr. Grossman exhibited throughout the proceedings, but also identified the fact that distributions have been diminished, distributions have been delayed. And in the view of Judge Sastone, when you have this kind of tactic that delays, multiplies, and increases costs within the context of a bankruptcy proceeding, even a heightened scrutiny should be employed. I believe that that is a point that is well taken and one that I hope that this Court would adopt. I also want to stress what the bankruptcy judge stated in its supplemental decision, and that is we're not talking about a single filing. We're not talking about a single motion for reconsideration. We're talking about a continued course of conduct throughout the proceedings that fixatiously multiplied the proceedings, delayed the proceedings, and increased the litigation costs. Mr. Grossman wants to criticize the liquidation trustee and his attorney because of the amount of the fees. But the fact of the matter is that the fees were as extensive as they were because of the number of frivolous filings. If we didn't have the number of frivolous filings that we did, the fees would have been dramatically less. And though we have not requested fees for anything that had occurred on appeal before the bankruptcy court, you see that the continued pattern of that kind of conduct continues. We've now had seven appeals. We had three appeals from the Gordon's claim and four since that time. We have this sanction appeal pending in this Court. We have the discovery appeal pending that's going to be decided on the brief. We have an appeal of the trustee's fees that was dismissed for lack of standing, and that we have a premature appeal of the March 2013 finding of the bankruptcy judge that Mr. Grossman had engaged in conduct that warranted the imposition of sanctions. Seven appeals in this case for a claim that could have been handled much more efficiently and effectively. I've been a member of the practicing bar for longer than I care to admit. It gives me no pleasure to sit here and take the time of this panel on this kind of a case. It's bothersome to me not only what happened in terms of an attorney with a vested interest trying to push a claim that lacked merit, but we added aggravation to the fact by the multitude of frivolous and vexatious filings. And then the third thing I want to touch on because I feel like I wouldn't be a loyal member of the bar unless I did, the disrespect to the judiciary. If all of these three components of Mr. Grossman's conduct don't warrant sanctions, I don't know what would. Your Honors, I ask you on behalf of the liquidation trustee and on behalf of the creditors to affirm in its entirety the decision of the bankruptcy judge which imposed sanctions against Mr. Grossman. I believe that the sanctions are warranted. I believe that the amount of sanctions is proper, and I thank you for your time. Thank you, Ms. Mazur. I believe you still have seven minutes since we kind of commandeered your seven minutes at the end of your initial presentation, Mr. Grossman. Yes, thank you, Your Honor. Just briefly, it's significant that Ms. Mazur admits the fact that the renewed motion was filed late. She says it's harmless error. Allegedly because, oh, there were the other motions pending previously which had to be decided. Not so. Look at the notice of motion. The renewed sanctions motion, one day late, was docket number 953. 954 was the notice of motion on which we went to trial. That notice of motion also filed one day late specifies that the only issue to be decided at the trial is the renewed sanctions motion. The notice of motion which they filed did not give me any notice that the prior sanctions motions were going to be litigated. It gave notice only that the renewed sanctions motion, the one day late sanctions motion, was going to be tried. Due process requires that the decision be limited by their own notice of motion, docket number 954, limited to that, which was one day late. And they admit they were one day late. In addition to that, the prior sanctions motions were narrower. They would not have been a basis for this entire gestalt finding by Judge Shastow in addition to the fact that the notice of motion limited it to the renewed sanctions motion. Ms. Mazur talks about a lot of other issues. She talks about recusal. Judge Harrison, you asked about the consequences of recusal. I respectfully refer the court to the cases in the footnote on page 5 of my reply brief. And in those cases, the Sixth Circuit, as well as every other circuit, consistently holds that if a trial judge is recused, that's it. It's reversed. It has to go back to a different judge. That's clear. Ms. Mazur talks about the fact that Judge Shastow allegedly made some, quote, innocuous statements about my appeals. I don't think the following statements are innocuous. Frivolous and repetitive, designed to multiply and delay, held dividends hostage during the appellate process, any and every reason to multiply the proceedings, the liquidation estate was harmed, blockades to distribution to substitute for lack of merit of the claim. That's how Judge Shastow characterized my appeals. I don't think a trial judge has any business to criticize lawful, legitimate appeals. That undermines the entire appellate process. That's in addition to the fact that Judge Shastow ordered me, over my repeated objections, to disclose my settlement position on the record. That's in addition to the fact that twice in her decisions, she basically threatened me with further sanctions should I appeal. Totally inappropriate by a trial judge. That's in addition to the fact that three times, not once, not twice, but three times, Judge Shastow either initiated or invited sanctions proceedings. I respectfully submit to you, if a trial judge feels so strongly about sanctions, that he or she is going to initiate or invite sanctions motions, not once, not twice, but three times in a single proceeding. That trial judge should step aside. That's in addition to the fact that Judge Shastow was adjudicating her own personal dispute against me. I pointed out, without dispute by the trustee, that Judge Shastow constantly flip-flopped. She first told us to focus only on the service issues. Then when we made progress there, she said, stop, focus only on the merits. Then when we made progress there, she said, stop, go back to the service issues. Then when we made progress there, she said, stop, go to the merits again. Four times she forced us to reverse. I said, Judge, you're a major cause of delay here. You may have your reasons, that's fine, but don't blame me for delay when the record shows, without dispute by the trustee, that the trial judge was constantly reversing herself, forcing us to stop and start on the issues we were permitted to pursue. I clearly had a personal dispute with Judge Shastownum over who was the cause of delay. Two problems with that. Number one, Judge Shastownum didn't even address that, even though my arguments were clearly supported by the record and not disputed by the trustee. But in addition to that, where a judge clearly has a personal dispute with a litigant, and I was a litigant, that judge should step aside. She adjudicated her own personal dispute with me. Very predictably, she found me guilty of delay nine times, and I cited them. Nine times she accused me, delay, dilatory, delay. She never mentioned the delays which she herself caused, not the least of which is the fact that she was anything but impartial. For all these reasons, you put all this together, with all due respect, this should be a slam dunk for recusal. No federal judge, no judge anywhere in this country, should sit in a case where this kind of bias exists. Ms. Mazur talked about the K-1s, that they showed only equity. The K-1s were only one of 13 loan versus equity factors. Ms. Mazur talked about the fact that when I filed the new claim, it allegedly showed the frivolousness of the original claim, because I said I'd be willing to abandon the original claim. Of course, I'm not seeking a double recovery. I can only collect the money once. If the original claim works, fine, forget the new claim. If the new claim works, fine, forget the original claim. I'm not seeking a double recovery here. That doesn't mean I'm changing legal theories. We just had different legal theories as a basis for recovering the $1 million. I was not seeking the double recovery. I respectfully submit. I see my time is up. I respectfully submit. Your honors should reverse. On any one of the grounds, and I thank the court for its time. Mr. Grossman and Ms. Mazur.